**Linda A. BOWLING, Administratrix of the Estate of Claude Calvin Howell, Jr., Plaintiff,**

v.

**E. Preston OLDHAM, Forsyth County Sheriff; Graham Pervier, Forsyth County Manager; Forsyth County Board of Commissioners, Defendants.**

**No. C–89–433–WS.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

Nov. 29, 1990.

Jack W. Floyd and Robert V. Shaver, Jr., Greensboro, N.C., for plaintiff.

Dewey W. Wells and Nathaneal K. Pendley, Winston–Salem, N.C., for defendants.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter arises from allegations by the plaintiff that the deceased, Claude Calvin Howell, Jr., died as a result of violations of his civil rights. Plaintiff seeks a ruling in advance of trial as to whether the North Carolina wrongful death statute (N.C.Gen.Stat. § 28A–18–2 (1984)) is applicable in determining the measure of damages for actions brought pursuant to 42 U.S.C. § 1983 (1981).

### Factual Background

The deceased, Claude Calvin Howell, Jr., was a detainee in the Forsyth County jail from December 29, 1987 until February 16, 1988. Upon arriving, the decedent informed the jailers that he was a diabetic and required multiple daily injections of insulin. On February 14, 1988, the decedent allegedly refused to inject himself with insulin, and jailers also refused because of departmental policy. Later that day after complaining of nausea, the decedent was taken to Forsyth Memorial Hospital. Jailers reported to the examining physician that the decedent had not taken his morning injection of insulin. After receiving insulin, the decedent was released and taken back to Forsyth County jail. The following day, the decedent completed a form requesting medical treatment after again refusing his insulin injection. Despite the request, the decedent was not seen by medical personnel. On the morning of February 16, 1988, the decedent requested jailers to administer his insulin injection; they refused. Later that morning, the decedent was found in need of immediate medical attention and was taken again to Forsyth Memorial Hospital, where he died later that afternoon.

### Discussion

■ The court is faced with the task of determining whether the measure of damages is to be formulated using a federal standard or by means of the North Carolina wrongful death statute. Because 42 U.S.C. § 1983 (1981) does not provide remedial guidance for actions of wrongful death, the court must look to the language of 42 U.S.C. § 1988 (1981) for its guidance:

The jurisdiction in civil ... matters conferred on the district courts by [civil rights acts], for the protection of all persons in the United States, ... and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect;

but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies, ... the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause....

Thus § 1988 formulates three steps for determining the proper remedy for actions brought pursuant to § 1983. First, courts are to look to the federal laws for an appropriate remedy. Second, if there is no federal remedy, courts are to look to the laws of the forum state. The third step is to apply state law only if it is consistent with the Constitution and laws of the United States. *See Burnett v. Grattan*, 468 U.S. 42, 47–48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984).

■ The court finds as fact that there is no federal statutory law governing the measure of damages in wrongful death actions brought pursuant to § 1983, and, therefore, it is compelled by § 1988 to use the law of North Carolina (N.C.Gen.Stat. § 28A–18–2 (1984)). *See Robertson v. Wegmann*, 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978).

Using the North Carolina wrongful death statute as the remedial reference point, the task is now to determine whether this statute is consistent with the laws of the United States. "In making this determination, the court is not bound to the stark language of the Constitution and statutes, but consideration must also be given to the policies behind the same." *Jones v. George*, 533 F.Supp. 1293, 1302 (S.D.W.Va. 1982); *see also Robertson*, 436 U.S. at 590, 98 S.Ct. at 1995; *Sullivan v. Little Hunting Park*, 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969). The policies underlying § 1983 are twofold. They include compensation of persons injured by the deprivation of federal civil rights and the prevention of abuses of power by those

acting under color of state law. *Robertson*, 436 U.S. at 590–91, 98 S.Ct. at 1995.

Compensating the injured party is immaterial because Claude Calvin Howell, Jr. is dead. However, the North Carolina wrongful death statute provides adequate relief for the estate of the deceased. The policy of preventing abuses of power by state officials is satisfied by the availability of punitive damages.

The court in *Jones* faced a similar problem in determining whether the West Virginia wrongful death statute satisfied the policies of § 1983. The plaintiff in that case brought suit on behalf of the decedent who died while in custody at the West Virginia State Penitentiary. Judge Staker ruled that the "remedies available under the West Virginia wrongful death law ... suffice to meet the § 1983 'deterrence of official misconduct' policy." Judge Staker continued by saying:

Decedent Jones was and is survived by his mother, one brother, three sisters and the spouses of all of these persons. The potential damages in a West Virginia wrongful death action are broad by category and notably include punitive damages. *Bond v. City of Huntington*, [166 W.Va. 581,] 276 S.E.2d 539 (W.Va.1981). The other stated policy of § 1983, that of compensating the victim of constitutional deprivation, is not in issue as it relates to the personal injury claims, since Elmer Combs is dead.

*Jones*, 533 F.Supp. at 1305 (footnote omitted).

The plaintiff recognizes that there is no federal law providing for measure of damages in a wrongful death action but suggests that the court should create such a remedy and not apply the North Carolina law. Plaintiff relies primarily on *Gilmere v. City of Atlanta, Georgia*, 864 F.2d 734 (11th Cir.1989), and *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489 (10th Cir. 1990), for this assertion.

In *Gilmere*, plaintiff brought suit against the City of Atlanta and two of its police officers for the beating and shooting death of her brother. Plaintiff was awarded $25,000 in damages, but the verdict was

appealed, resulting in a remand. The district court declined to award additional damages, claiming the initial award was adequate. Plaintiff appealed, alleging the district court erred in not awarding damages pursuant to the Georgia wrongful death statute, which would have awarded greater damages. The Court of Appeals for the Eleventh Circuit affirmed, holding that "there is no requirement that a state remedy be employed to compensate for a violation of a federal interest." *Gilmere*, 864 F.2d at 739. They reasoned that applying a federal standard of damages would "promote consistency." *Id.*

The correct application of § 1988 promotes consistency even though the federal courts are not provided with a uniform remedy in wrongful death cases. The court cannot blatantly overlook a congressional mandate simply because it feels it may be more efficient. To say that there is no requirement for a federal court to apply a state remedy is totally without merit. Title 42, United States Code, Section 1988, clearly instructs federal courts to apply the state law when there is no federal law and when state law is consistent with the laws of the United States. The court declines to follow the Eleventh Circuit.

Plaintiff also believes that *Berry* supports her argument. In that case, the widow of an inmate killed in the Muskogee City–Federal Jail brought suit against the city alleging various civil rights violations. A jury returned a verdict in favor of the plaintiff and awarded $100,000 in damages. One of the issues on appeal was whether the measure of damages should have been formulated by supplementing the state's survival statute with the state's wrongful death statute. The *Berry* court concluded:

> [S]upplmenting a state survival action with a state wrongful death action does not satisfy the criteria of § 1988 for borrowing state law. The laws are not suitable to carry out the full effects intended for § 1983 cases ending in death of the victim; they are deficient in some respects to punish the offenses. Application of state law, at least in some instances, will be inconsistent with the predominance of the federal interest.

We therefore conclude, as did the Sixth Circuit in *Jaco* [*v. Bloechle*, 739 F.2d 239 (6th Cir.1984)], that the federal courts must fashion a federal remedy to be applied to § 1983 death cases. The remedy should be a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is "to the party injured." 42 U.S.C. § 1983. It must make available to plaintiffs sufficient damages to serve the deterrent function central to the purpose of § 1983. In accord with *Smith* [*v. Wickline*, 396 F.Supp. 555 (W.D.Okl.1975)] punitive damages may be recovered in appropriate cases. As for compensatory damages we look to the Supreme Court's statement in *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)....

*Berry*, 900 F.2d at 1506–07.

What the plaintiff in the present case fails to see is that the court in *Berry* reached its conclusion only after applying § 1988 and concluding that there was no federal law governing this area and that state law was inconsistent with the policies of § 1983.

The court agrees with the manner in which the *Berry* court applied § 1988 but disagrees with the court's conclusion that "the federal courts *must* fashion a federal remedy to be applied to § 1983 death cases." *Id.* 900 F.2d at 1506 (emphasis added). The language of § 1988 is clear, and for the court to do otherwise oversteps the function of the judiciary into the domain of the legislature. Congress and Congress alone has the power to create a uniform federal remedy for wrongful death actions. The court is, therefore, in a position to do only what § 1988 authorizes.

### Conclusion

In light of the foregoing, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the North Carolina wrongful death statute (N.C.Gen.Stat. § 28A–18–2 (1984)) is the appropriate law for determining the measure of damages in wrongful

death actions brought pursuant to 42 U.S.C. § 1983 (1981).